This Document Prepared By:
TEDDY BOURGOIN
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715
(800) 416-1472

Requested By and
When Recorded Return To:
 Loan Modification Solutions
 3220 El Camino Real
 Irvine, CA  92602
 (800) 323-0165

Tax/Parcel #:  U32/ 13/ M/ /
_____ [Space Above This Line for Recording Data] _____
Original Principal Amount: $168,500.00
Unpaid Principal Amount: $160,904.66
New Principal Amount $208,608.48
Total Cap Amount: $47,703.82

## LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: JANUARY 23, 2017
Borrower ("I"):[1] DAVID GRIMALDI
Borrower Mailing Address: 80 MIDDLE ROAD, FALMOUTH, MAINE 04105
Lender or Servicer ("Lender"): WELLS FARGO BANK, N.A.
Lender or Servicer Address: 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") JULY 27, 2005 and the Note ("Note")
date of JULY 27, 2005
Property Address ("Property"): 80 MIDDLE ROAD, FALMOUTH, MAINE 04105

Legal Description:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Prior instrument reference: Recorded on AUGUST 9, 2005 in BOOK 22996  PAGE 33, of the Official

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my") shall include the plural (such as "we" or "our") and vice versa where appropriate.

Page 1


EXHIBIT G

Records of CUMBERLAND COUNTY, MAINE

This Loan Modification Agreement ("Agreement") is made on JANUARY 23, 2017 by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **Borrower Representations.**

    I certify, represent to Lender and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

    B. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

    C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

    D. I have made or will make all payments required within this modification process;

    E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

2. **The Modification.**

A. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be $208,608.48 (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. Interest at the rate of **3.5000%** will begin to accrue on the New Principal Balance as of **FEBRUARY 1, 2017** and the first new monthly payment on the New Principal Balance will be due on **MARCH 1, 2017** Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 480 | 3.5000% | 02/01/2017 | $808.13 | $393.54 | $1,201.67 | 03/01/2017 |

\* This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3. **Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from **JANUARY 1, 2014** to **MARCH 1, 2017**. The first modified contractual due date is **MARCH 1, 2017**.

B. The maturity date is **FEBRUARY 1, 2057**.

C. The amount of Recoverable Expenses* to be capitalized will be U.S. **$2,945.00**.

\*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

D. Lender will forgive outstanding Other Fees U.S. **$245.00**. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

- E. Lender will forgive outstanding NSF Fees U.S. $0.00.

- F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. $677.43.

- G. The amount of interest to be included (capitalized) will be U.S. $31,845.90.

- H. The amount of the Escrow Advance to be capitalized will be U.S. $12,912.92.

4. **Additional Agreements.**

   I agree to the following:

   - A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

   - B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

   - C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D. If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

E. If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

F. If the Borrower's home owners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

G. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any

remedies permitted by the Loan Documents without further notice or demand on Borrower.

H. If Borrower has a pay option adjustable rate mortgage Loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

I. If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred, plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein, which has been discharged in bankruptcy.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R. Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **FEBRUARY 1, 2017**.

S. I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T. Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement by **FEBRUARY 7, 2017**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.

By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.

In Witness Whereof, I have executed this Agreement.

_____  2/3/17
Borrower: DAVID GRIMALDI                  Date

_____ [Space Below This Line for Acknowledgments] _____

## BORROWER ACKNOWLEDGMENT

STATE OF MAINE
COUNTY OF _Cumberland_

The foregoing instrument was acknowledged before me this ~~January~~ February 3, 2017 by
**DAVID GRIMALDI**

_____
Notary Public

Print Name: _Melinda Torrens_

My commission expires: _8/13/2017_

MELINDA ~~~~
Notary Public
Maine
My Commission Expires Aug 13, 2017

In Witness Whereof, the Lender have executed this Agreement By: Selene Finance LP, as Attorney-in-Fact And Successor Senior

WELLS FARGO BANK, N.A. ~~OR SUCCESSOR IN INTEREST~~

By: (print name) **Anne C. Schroeder**     (sign) Anne Schroeder     3/28/17
(title) **Assistant Vice President**

_____ [Space Below This Line for Acknowledgments] _____

STATE OF ~~MINNESOTA~~ FLORIDA

COUNTY OF DUVAL

This instrument was acknowledged before me MARCH 28TH, 2017 (date) by **Anne C. Schroeder** (name(s) of person(s)) as **Assistant Vice President** (type of authority, e.g., officer, trustee, etc.) of WELLS FARGO BANK, N.A. (name of party on behalf of whom the instrument was executed).

_____
Notary Public

Printed Name: Kristina Gorman

My Commission Expires: 2/2/2021

Kristina Gorman
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG068928
Expires 2/2/2021

EXHIBIT A

BORROWER(S): DAVID GRIMALDI

LOAN NUMBER: (scan barcode)

LEGAL DESCRIPTION:

BEGINNING AT A POINT ON THE WESTERLY SIDE OF SAID MIDDLE ROAD WHICH IS DISTANT NORTHEASTERLY SIX HUNDRED TWENTY-ONE AND FIVE-TENTHS (621.5) FEET, MORE OR LESS, FROM THE NORTHEASTERLY SIDE LINE OF PLEASANT HILL ROAD, SAID POINT ALSO BEING THE NORTHEASTERLY CORNER OF LAND NOW OR FORMERLY OF ARCHER E. DOUGLAS; THENCE NORTHWESTERLY ALONG THE NORTHEASTERLY SIDE LINE OF SAID DOUGLAS LAND ONE HUNDRED SEVENTY-FIVE (175) FEET TO THE CORNER THEREOF; THENCE NORTH 58" 30' EAST EIGHTY (80) FEET TO THE SOUTHWESTERLY CORNER OF LAND NOW OR FORMERLY OF JESSE HAMLIN; THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY SIDE LINE OF SAID HAMLIN LAND ONE HUNDRED SEVENTY-FIVE (175) FEET TO SAID MIDDLE ROAD; THENCE SOUTHWESTERLY ALONG THE WESTERLY SIDE OF SAID MIDDLE ROAD EIGHTY (80) FEET TO THE POINT OF BEGINNING.

ALSO KNOWN AS: 80 MIDDLE ROAD, FALMOUTH, MAINE 04105

DOC :16771  BK:33941  PG:91
RECEIVED - RECORDED, CUMBERLAND COUNTY REGISTER OF DEEDS
04/13/2017, 08:24:21A
Register of Deeds Nancy A. Lane   E-RECORDED

Date: **JANUARY 23, 2017**
Loan Number: (scan barcode)
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **DAVID GRIMALDI**

Property Address: **80 MIDDLE ROAD, FALMOUTH, MAINE 04105**

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_[signature]_   2/3/17

Borrower:   Date
**DAVID GRIMALDI**